UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| JONATHAN D. KING, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:18-cv-03524-SEB-MPB |
| CITY OF FISHERS, | ) | |
| TROY FETTINGER, | ) | |
| KYLE MCFERRAN, | ) | |
| ERIC FREEMAN, | ) | |
| EDWARD GEBHART, | ) | |
| MITCHELL S. THOMPSON, | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' SUCCESSIVE MOTION FOR PARTIAL SUMMARY JUDGMENT**

On November 13, 2018, Plaintiff Jonathan D. King *pro se* initiated this civil rights lawsuit against the City of Fishers, Indianapolis ("Fishers") and several of its police officers (collectively "Defendants," unless context requires otherwise). On May 15, 2019, the Magistrate Judge granted Mr. King's motion to file a second amended complaint in which Mr. King alleges that Defendants violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. [Dkt. 28]. Mr. King specifically alleges that Defendants conducted an unreasonable search of his home (Count I), that they wrongfully arrested him without probable cause (Count II), that they failed to secure his property (Count III), and that they failed to properly investigate the circumstances leading to his arrest (Count IV). His complaint also seeks to hold Fishers accountable under a theory of *Monell* liability.

1

On September 30, 2020, we granted in part and denied in part Defendants' Motion for Summary Judgment. We denied the motion with respect to Count I. We also denied the motion with respect to Count IV to the extent Mr. King's allegations were unaddressed by Defendants' briefing. Summary judgment was granted to Defendants on Count II, III, V, as well as the portions of Count IV repeating the allegations set out in Count II and III, namely, the claims for wrongful arrest of Mr. King and the alleged unlawful seizure of his property.

Defendants sought and were granted leave to file a successive motion for partial summary judgment addressing the remaining allegations set out in Count IV of the Second Amended Complaint. That motion is now ripe for our review. For the reasons set forth below, Defendants' Successive Motion for Partial Summary Judgment [Dkt. 112] is **granted.**

## Background

### I. Factual Background

The following facts are undisputed between the parties, unless so noted.[1]

On November 11, 2016, Charlina O'Brien telephoned 911 to report that she had been involved in a physical altercation with her boyfriend, Mr. King. [Dkt. 49, Def. Exh. A]. During the 911 phone call, Ms. O'Brien requested the aid of an ambulance, stating

---

[1] A full recitation of the facts giving rise to this litigation can be found at Docket No. 96 at pages 4-9. We review here only the facts relevant to the pending motion and revisit those facts that are necessary to address various issues raised in Mr. King's briefing, including his objections to Defendants' summary judgment submissions and his concerns related to our prior summary judgment ruling.

that her nose was bleeding and that it may have been broken by Mr. King. [*Id.*]. She confirmed that she believed Mr. King was still at his residence in Fishers, Indiana, though she, herself, had relocated to a neighbor's home. [*Id.*]. The 911 operator dispatched Fishers Police Officer Kyle McFerran, who was on routine patrol at the time, to investigate Ms. O'Brien's claims. [*Id.*; McFerran Aff. ¶¶ 3-5].

When he arrived at Ms. O'Brien's location at the neighbor's house, Officer McFerran observed that she had multiple injuries, including a bloody nose, scratches on her chest and hands, a bloody toe on her left foot, and a bruise and scratch on her back. Officer McFerran also noted that Ms. O'Brien had dried blood on the side of her face, on her hand, and on her arm. [*Id.* ¶ 6, Exh. 1]. When Officer King asked Mr. O'Brien how her injuries were incurred, she explained that she had been arguing with Mr. King for several hours and that, during their argument, he struck her and "pushed her around the house." [*Id.* ¶ 7].

While Officer McFerren was speaking with Ms. O'Brien, Sgt. Troy Fettinger of the Fisher's Police Department arrived on the scene. Sgt. Fettinger also observed Ms. O'Brien's injuries, and she reiterated to him that Mr. King had caused them. [Fettinger Aff. ¶¶ 3-5]. Ms. O'Brien informed the officers that Mr. King remained in his home, that he had access to several firearms, and that he typically carries a gun on his person. [McFerran Aff. ¶ 8].

While Officer McFerren was speaking with Ms. O'Brien, Sgt. Troy Fettinger of the Fisher's Police Department arrived on the scene. Sgt. Fettinger also observed Ms. O'Brien's injuries, caused, as she said, by Mr. King. [Fettinger Aff. ¶¶ 3-5]. Ms. O'Brien

3

informed the officers that Mr. King remained in his home, that he had access to several firearms, and that he typically carries a gun on his person. [McFerran Aff. ¶ 8].

Officer McFerren and Sgt. Fettinger then walked to Mr. King's nearby home. [Fettinger Aff. ¶ 6; McFerran Aff. ¶ 10]. Sgt. Fettinger went to the rear of the home while Officer McFerran approached the front. [Fettinger Aff. ¶ 7; McFerran Aff. ¶ 11]. Officer McFerran knocked on the front door of Mr. King's home several times before Mr. King answered. [McFerran Aff. ¶ 12]. The parties dispute what happened next—Officer McFerran reports that Mr. King invited him into the residence; Mr. King denies having done so. [*Id.* ¶ 14; King Aff. 4, § 9]. Officer McFerran ultimately ordered Mr. King to exit the home, and when he complied, Officer McFerran handcuffed and *Mirandized* him. [McFerran Aff. ¶ 14].

Following Mr. King's apprehension in the front yard of the residence, Sgt. Fettinger joined Officer McFerran in that location and together they entered the residence to "secure the interior and confirm that no one else was inside." [*Id.* ¶¶ 8, 9; McFerran Aff. ¶ 16].

Once Officer McFerran had secured Mr. King's residence, he returned to speak with Ms. O'Brien, whose injuries were being treated by paramedics of the Fisher's Fire Department. [McFerran Aff, ¶¶ 22-23]. During her second conversation with Officer McFerran, Ms. O'Brien informed him that she had been living with and dating Mr. King for seven years. [*Id.* ¶ 24]. She also reported that Mr. King had earlier that day pulled her off the toilet, slapped her, and dragged and pushed her. [*Id.* ¶ 25]. She stated further to Sgt. Fettinger that Mr. King had smacked her in the nose, pulled her around by her arm,

4

and pushed her into walls and down on the floor. [Fettinger Aff. ¶ 27]. During their conversations with Ms. O'Brien, both Officer McFerran and Sgt. McFerran observed that she was "visibility upset." [McFerran Aff, ¶ 26; Fettinger Aff. ¶ 27].

Maria Rhea, a Fishers Fire Department paramedic who examined Ms. O'Brien at the scene, discovered that Ms. O'Brien had multiple bruises on her back and extremities as well as a contusion on her head. She also observed that Ms. O'Brien's fingers and toes were covered in blood and lacerations. Ms. O'Brien informed Ms. Rhea that Mr. King was her boyfriend of six years and that she feared for her life. Ms. Rhea conveyed this information to the police officers. [Rhea Affidavit, ¶¶ 6-12].

Officer McFerran questioned Mr. King at the scene about the incident. Mr. King denied striking, punching, kicking, or otherwise physically harming Ms. O'Brien. He also claimed to have no knowledge of how she received her injuries. [Fettinger Aff, McFerran Aff, ¶ 36]. Mr. King further told Officer McFerran that this was not the first time Ms. O'Brien had contacted the police to make false allegations against him. [*Id.* ¶ 37].

Mr. King was arrested and taken into custody on the charge of domestic battery and transported to Hamilton County Jail, where he remained for four days, until November 15, 2016. [Sec. Am. Comp. ¶ 137]. Mr. King alleges that, upon his return home on November 15, 2016, he noticed that his "guns and safe including its contents such as knives and ammunition" were missing from his home. [Sec. Am. Comp. ¶ 138]. Three days later, on November 18, 2016, he reported the missing items to the Fishers Police Department. [*Id.* ¶ 139]. That night, Fishers Police Officer Eric Freeman went to Mr. King's residence to investigate the alleged theft. [Def. Br., at 2, 22]. However,

Officer Freeman refused to discuss with Mr. King the circumstances of his arrest several nights prior, though Mr. King pressed for the continuation of investigation. Mr. King believes that Officer Freeman was complicit in a coverup that had been initiated by Officer McFerran and Sgt. Fettinger to steal or conspire to steal Mr. King's property. [Pl. Aff. 4, § 6].

Officer McFerran and Sgt. Fettinger assert at no time during their investigation or any time thereafter did they, or any other member of the Fishers Police Department, remove or otherwise facilitate the removal of personal property from Mr. King's home. [Fettinger Aff. ¶ 39; McFerran Aff. ¶ 42].

On April 28, 2017, Mr. King sent a letter to Chief of Police Mitchell S. Thompson outlining his grievances relating to his arrest for domestic battery as well as the subsequent investigations of the alleged theft of property from his home. Chief Thompson informed him that, because his criminal case was pending at that time and because he had an attorney representing him in that case, all communications would necessarily need to go through Mr. King's attorney. [Thompson Aff, ¶¶ 4-5, 7-8; King Aff §§ 12-13].

On June 1, 2017, following the dismissal of Mr. King's criminal charge, Assistant Chief of Police Edward Gebhart,[2] at the request of Chief Thompson, contacted Mr. King to discuss the matters contained in his letter to Chief Thompson. Mr. King requested that the Police Department admit that his arrest was unlawful, or, alternatively, issue a written

---

[2] Chief Thompson retired and Assistant Chief Gebhart was promoted to Chief, though we refer to each based on the titles they held at the time.

explanation of "why it was standing behind its original position." Following a review of Mr. King's arrest record, Assistant Chief Gebhart attempted to explain to Mr. King that Sgt. Fettinger and Officer McFerran had made their decisions based on the information known to them at the time. [Gebhart Aff. ¶¶ 4-10; King Aff §§ 14-16].

## II. Procedural Background

Mr. King's Second Amended Complaint, which is the currently operative pleading, seeks to hold Sgt. Fettinger, Officer McFerran, Officer Freeman, Chief Thompson, and Assistant Chief Gebhart each personally liable for various constitutional violations. Mr. King's complaint charges Sgt. Fettinger and Officer McFerran with three violations of the Fourth Amendment, specifically, that they conducted an unreasonable search of his home (Count I), that they wrongfully arrested him without probable cause (Count II), and that they failed to secure his property (Count III). He also alleges that these officers along with Chief Thompson, Assistant Chief Gebhart, and Officer Freeman violated his Fourteenth Amendment due process rights by failing to properly investigate the domestic battery allegations (Count IV). Finally, Mr. King seeks to hold Fishers liable under a theory of *Monell* liability (Count V).

The docket reflects that on October 30, 2019, Defendants filed their first motion for summary judgment, claiming their entitlement to summary judgment on all counts against them, which we granted in part and denied it in part.

We denied Defendants' request for summary judgment on Count I claiming that Defendants had unreasonably searched his home in violation of the Fourth Amendment because disputed material facts precluded a finding for Defendants. As we explained:

It is undisputed that the officers did not have a warrant to search Mr. King's home. Because government entry into one's home is the "chief evil against which the Fourth Amendment is directed," the law presumes that a warrantless search is unreasonable. *United States v. Sabo*, 724 F.3d 891, 893 (7th Cir. 2013) (*Payton v. New York,* 445 U.S. 573, 585 (1980)). There are, however, exceptions to this presumption.

One exception exists where an individual consents to a search. *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000). Here, the officers maintain that Mr. King invited them inside his home, while Mr. King insists that he did not. We will not weigh or attempt to resolve the credibility of these conflicting factual assertions at summary judgment. It is not within the Court's purview to decide on summary judgment whether Mr. King consented to the search of his home.

[Dkt. 96, at 10]. No other exceptions to the warrant requirement appeared to be applicable.

We did rule that Defendants were entitled to summary judgment on Mr. King's allegation that he was arrested without probable cause, that is, on Count II of the Second Amended Complaint. We explained that "probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013) (*internal quotations omitted*). Based on the evidence before us, it was undisputed that when Mr. King was arrested for the offense of domestic battery, the officers were relying on the following circumstances and information:

> Ms. O'Brien had telephoned 911 to report that she had been assaulted by Mr. King and that she needed an ambulance to obtain medical treatment for her injuries. When Officer McFerran and Sgt. Fettinger arrived at Ms. O'Brien's location, they observed that she was visibly wounded with multiple injuries, including a bloody nose (which Ms. O'Brien believed to be broken), blood on her

hands and face, and scratches on her arms, chest, and back. She repeatedly informed the officers and the paramedic that Mr. King had assaulted her by striking and punching her, pushing her, and dragging her around the residence and caused these injuries. She further reported to paramedics—who following their examinations discovered additional injuries to Ms. O'Brien's person— that she feared for her life.

The officers questioned Mr. King, who denied causing Ms. O'Brien's injuries or knowing how she was injured. He also reported to the officers that Ms. O'Brien had previously lodged false reports to police that Mr. King had threatened her with a weapon.

Based on the totality of these circumstances, we concluded the officers had a reasonable basis to believe that Mr. King had committed the crime of domestic battery.[3] *Miller v. Whipker*, 2004 WL 1622212, at *13 (S.D. Ind. Mar. 31, 2004) (finding probable cause based on similar facts); *see also Lewis v. Hite*, 2014 WL 1921735, at *3 (S.D. Ind. May 14, 2014). We further explained that our probable cause determination did not depend on the truth of the allegations against Mr. King. *Lewis*, 2014 WL 1921735, at *3.

Mr. King has remained adamant in his responses[4] that the officers should not have believed Ms. O'Brien's account because of her "earlier false report," which he contends

---

[3] Indiana law provides: "a person who knowingly or intentionally touches a family or household member in a rude, insolent, or angry manner . . . commits a domestic battery, a Class A misdemeanor." Ind. Code 35-42-2-1.3(a)(1).

[4] We note here that Mr. King's briefing on the pending motion reads as a motion to reconsider our first summary judgment ruling, attacking the integrity of our ruling, attempting to remedy evidentiary deficiencies that we identified in his earlier summary judgment briefing, and re-arguing decided issues. However, Mr. King did not file a motion to reconsider, and the deadline to do so passed months prior to the filing of the pending motion. FED. R. CIV. P. 59(E); *Jones v. Wells Fargo Bank, N.A.*, No. 1:18-CV-125-TLS, 2018 WL 6303683, at *2 (N.D. Ind. Dec. 3, 2018); *see also Williams v. Illinois*, 737 F.3d 473, 475 (7th Cir. 2013). Even if Mr. King's contentions were properly asserted in a timely motion to reconsider, they would be meritless Though Mr. King repeatedly attacks our order as erroneous, he fails to identify any "manifest error of law" that would allow him to prevail on a motion for reconsideration. *Heyde v. Pittenger*, 633 F.3d 512, 521 (7th Cir. 2011). Instead, he recites his earlier arguments, each of which has already been rejected in granting summary judgment for defendants on Counts II and

made "so very clear that she is a false reporter." Our summary judgment ruling lays out the basis for our determination that probable cause existed to arrest him, despite Mr. King's protestations:

> Mr. King's communications to the officers that Ms. O'Brien had previously made false accusations against Mr. King, however, did not negate their contemporaneous, objective observations of her injuries coupled with her verbal reports that Mr. King had caused them. Police officers, when determining if probable cause exists to arrest, are well advised to conduct further investigation when there is information that would lead a reasonable officer to be suspicious of the victim's story, but the Seventh Circuit has nonetheless explained:
>
>> Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established. Consequently, the law does not require that a police officer conduct an incredibly detailed investigation at the probable cause stage. Accordingly, the inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation.
>
> *Spiegel v. Cortese*, 196 F.3d 717, 724-25 (7th Cir.1999).

Applying *Spiegel*, we were unpersuaded by Mr. King's claims that the officers ignored "exculpatory evidence" when they proceeded with his arrest. We further explained that any "inconsistencies" in Ms. O'Brien's statements made to police did not undermine the conclusion that the officers had probable cause to arrest Mr. King. These

---

V. Mr. King's recourse at this point is on appeal once all pending issues have been resolved. Finally, we note that Mr. King's challenges to our decisions to disregard certain portions of his affidavits submitted in the first round of summary judgment briefing misstate their basis. We did *not* disregard the affidavits in their entirety. We considered them to the extent they were admissible based on Mr. King's personal knowledge of the issues, that is, those portions of his affidavits expressing what he personally observed or did on the day in question. However, as explained, we could not accept as true statements made in his affidavits that reflected only his speculations, his legal theories, his inferences or conclusions that he had drawn from evidence, or his summaries of evidence (including police recordings) that he did not submit to the Court, despite the notice provided to him regarding his summary judgment duties.

alleged inconsistencies between Ms. O'Brien initial statement attributing her nose injury to Mr. King punching or smacking her, while later claiming that he pushed her into the wall, do not alter our conclusion. Given that the officers had, in the course of their investigation, sought clarification on these inconsistencies, we determined their actions to be reasonable. "Importantly," as we explained, "the Seventh Circuit does not mandate that a putative victim provide a flawless account of events." [Dkt. 96 at 18 (citing *Miller*, 2004 WL 1622212, at *13; (citing *Spiegel*, 196 F.3d at 717). As the Seventh Circuit established in *Spiegel*:

> Nothing suggests that a victim's report must be unfailingly consistent to provide probable cause. The credibility of the putative victim or witness is a question, not for police officers in the discharge of their considerable duties, but for the jury in a criminal trial. We refuse to require law enforcement officers to delay arresting a suspect until after they have conclusively resolved each and every inconsistency or contradiction in a victim's account.
>
> *Spiegel*, 196 F.3d at 724-25.

Accordingly, we ruled that the officers were not unreasonable in their assessment of probable cause, even in light of any such inconsistencies.[5] Finally, we rejected Mr. King's insistence that, following his arrest, the officers deliberately ignored exculpatory evidence undermining their probable cause determination:

> "[O]nce probable cause has been established, officials have 'no constitutional obligation to conduct any further investigation in the hopes of uncovering

---

[5] Mr. King continues his relentless accusations against Defendants that they concealed or misrepresented information to the Court, insisting that they have misrepresented his attempts to prove his innocence on the night of the incident. These accusations are simply not true; Defendants have never denied that Mr. King informed them of the purported "false reports" from Ms. O'Brien, nor have they denied that there were inconsistencies in Ms. O'Brien's story on that evening. As we have exhaustively attempted to explain to Mr. King, these facts do not foreclose a finding that probable cause existed.

11

potentially exculpatory evidence.'" *Miller*, 2004 WL 1622212, at *14 (quoting *Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995). While "[t]he continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause," Mr. King has not identified any concrete facts that undermine the officers' probable cause to arrest him. *Id. (quoting BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986).

We also determined that Defendants were entitled to summary judgment on Count III of the Second Amended Complaint, finding that "there is simply no evidence that Officer McFerran and Sgt. Fettinger seized (or, as Mr. King puts it, 'stole') any personal property belonging to Mr. King." [Dkt. 96, at 19]. Mr. King's theory was based on a "trail of conjecture and speculation," which did "not create any questions of fact relating to whether the officers seized [his] property." [*Id.* at 21]. In resolving Count III, we also addressed Mr. King's "alternative" theory that the officers failed to secure his home, thereby exposing his property to a risk of theft by others. However, "to the extent Mr. King believes the officers caused the loss of his property, his remedy arises under the Indiana Tort Claims Act, not a civil rights claim," we wrote [Dkt. 96, at 21]

"The precise nature of Count IV," we noted, "is difficult to decipher from Mr. King's complaint and briefing," continuing as follows:

> He reiterates in part his earlier claims against Sgt. Fettinger and Officer McFerran that he was wrongfully arrested and deprived of his property. As previously noted, these allegations fall within the scope of Mr. King's Fourth and Fourteenth Amendment claims against the officers, which we have already addressed and resolved.

[Dkt. 96, at 21-22].

Mr. King alleged that Chief Thompson, Assistant Chief Gebhart, and Officer Freeman "deliberately fail[ed] to correct the wrongful actions" of Sgt. Fettinger and

12

Officer McFerran. In this claim, Mr. King asserts that, following his arrest, the officers should have continued to investigate whether there had been probable cause to arrest him. This allegation is the basis of his Fourteenth Amendment claim of "malicious prosecution" against all of the officers.

In their first motion for summary judgment, Defendants argued that Mr. King's malicious prosecution claim should not survive because state law provides an adequate remedy. Defendants' argument, however, proved to be a non-starter when the case on which Defendants relied was determined to no longer be good law. *See Newsome v. McCabe*, 256 F.3d 747, 749 (7th Cir. 2001), *abrogated by Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017). The Seventh Circuit has explicitly recognized "that Indiana state law does *not* provide an adequate remedy for malicious prosecution." *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013) (*emphasis in original*) (citing *Julian v. Hanna*, 732 F.3d 842 (7th Cir.2013)). Lacking any discussion by Defendants of the correct standard of review for malicious prosecution claims brought pursuant to section 1983, as set out in *Serino* and *Julian*, we denied the request for summary judgment on this issue. We further noted that, although we "doubt[ed] that the Fourteenth Amend affords [] a right to 'reinvestigation' following one's arrest" or that "these officers (as opposed to prosecutors) had any authority to remedy an allegedly wrongful arrest," Defendants had not advanced any legal argument in response to Mr. King's allegations regarding his Fourteenth Amendment right to reinvestigation.

Thus, we denied, in part, the request for summary judgment on Count IV.

Summary judgment on Count V, which sought to hold Fishers accountable under a theory of *Monell* liability, was granted. [Dkt. 96, at 25 ("We agree with Defendants that, to the extent the acts outlined in Count I or Count IV were constitutionally unsound, there is no evidence that these were anything but isolated incidents, which is insufficient for a *Monell* claim to survive.").

On October 21, 2020, Defendants sought leave to file this successive motion for summary judgment to address the "malicious prosecution" and "failure to reinvestigate" allegations contained within Count IV, which request we granted. Defendants' successive motion for partial summary judgment was filed on December 12, 2020, and is now ripe for our ruling.

## Analysis

### I. Standard of Review

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

Where the movants seek judgment on a claim on which the nonmovant bears the burden of proof, as Defendants do here, the movants are entitled to judgment as a matter of law if they can point to a failure of proof in the record such that no reasonable jury could find in the nonmovant's favor on one or more elements of his claims. *Celotex Corp.,* 477 U.S. at 322-23.

## II. Discussion

Mr. King's Fourteenth Amendment claim is grounded in 42 U.S.C. § 1983, which imposes liability on "[e]very person" who "subjects, or causes to be subjected" another to the deprivation of federal rights under color of state law.

Count IV of Mr. King's Second Amended Complaint alleges a violation of the Fourteenth Amendment's Due Process Clause. As explained above, this claim as crafted in the Complaint is exceedingly difficult to decipher, and Mr. King's briefing brings no additional clarity regarding his Due Process claim.[6] Mr. King appears to charge Chief

---

[6] For example, Mr. King dedicates significant portions of his briefing to accusations against Defendants for suppressing and mispresenting evidence presented to the state court in his criminal proceedings. He specifically contends that this misconduct inhibited or precluded the state court judge from issuing a proper probable cause determination prior to his arrest. Mr. King's theory again misses the mark. The question presented in his complaint is whether his warrantless arrest proceeded without probable cause; there is no judicial finding of probable cause at issue, and Mr. King is incorrect to the extent he believes that such a finding was required in order for the officers to carry out the arrest. No other allegations of evidence suppression or tampering can be inferred from Mr. King's complaint, and he is not permitted to broaden the scope of his claims at this belated juncture. Mr. King's briefing also accuses Defendants of misleading this court, though the allegations appear entirely unsubstantiated, lacking in any specific detail as to the nature of the alleged misrepresentations as well as any evidentiary support. Defendants cannot be deemed to be acting deceptively simply by articulating their interpretations of the law or facts with which Mr. King disagrees. We note as well that Mr. King's accusations that the undersigned judge assisted with Defendants' alleged malfeasances and harbors a bias against him likewise lack any substantiation.

Thompson, Assistant Chief Gebhart, and Officer Freeman with "deliberately failing to correct the wrongful actions of Sgt. Fettinger and Officer Freeman," believing that, following his arrest, these officers should have continued to investigate whether there had been probable cause and that they should have ultimately admitted that Mr. King had been wrongfully arrested. Mr. King reiterates his prior position that the arresting officers ignored or concealed exculpatory evidence when arresting him, therefore contending that he was the victim of malicious prosecution.

Though Defendants failed to respond directly to the allegations set out in Count IV of his Second Amended Complaint in their first round of summary judgment briefing, they have now successfully identified the critical deficiencies in Mr. King's Fourteenth Amendment theory, thus entitling them to summary judgment on this claim, for the reasons more fully explicated below.

As to Mr. King's theory that Defendants should have "reinvestigated" their probable cause determination, the Fourteenth Amendment imposes no such duty on them. As we have previously explained to Mr. King in our discussion of his unlawful arrest allegations, "[O]nce probable cause has been established, officials have 'no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence.'" *Miller*, 2004 WL 1622212, at *14 (quoting *Eversole*, 59 F.3d at 718. While it is true that "[t]he continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause," Mr. King has not identified any concrete facts that undermine the probable cause determination leading to his arrest. *Id.* Though he argues that Ms. O'Brien was a "false

16

reporter" and that the Officers should not have arrested him without further investigation into her credibility, we have previously thoroughly explained why this allegation, even if true, did not undermine the Officers determination of probable cause, which, once established, did not require further investigation.

To the extent Count IV of Mr. King's complaint encompasses a claim of malicious prosecution independent from his legal theory that the officers failed to properly reinvestigate the claims of domestic abuse, this claim cannot survive. To establish that Defendants maliciously prosecuted him, in violation of the Fourteenth Amendment, Mr. King must "allege a violation of a particular constitutional right, such as the right to be free from unlawful seizures under the Fourth Amendment, or the right to a fair trial under the Due Process Clause." *Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014). Here, the alleged constitutional violation providing the basis of Mr. King's allegations of malicious prosecution is his purportedly unlawful arrest. That arrest we have determined to be supported by probable cause. Notwithstanding this fact, these allegations cannot support a section 1983 malicious prosecution claim "because there is no such thing as a constitutional right not to be prosecuted without probable cause." *Id.* In other words, his assertion that he was arrested without probable cause leaves him with a wrongful arrest claim, not a due process claim. His malicious prosecution claim thus "fail[s] for a basic reason: he ha[s] not stated a constitutional violation independent of the alleged wrongful arrest." *Id.* (*quoting Serino*, 735 F.3d at 590.[7]

---

[7] Even if we were to find a properly alleged constitutional violation, Mr. King's malicious prosecution claim would still fail. If a violation were correctly alleged, Mr. King would be

17

Finding no other legal basis on which Mr. King's allegations set forth in Count IV of his complaint can survive, Defendants are entitled to summary judgment on Count IV of Mr. King's Second Amended Complaint.

## Conclusion

For the reasons set forth herein, Defendants' Successive Motion for Partial Summary Judgment [Dkt. 112] is **granted.** Consistent with this ruling and the prior conclusions set out in our September 30, 2020 Summary Judgment Order, Mr. King's Fourth Amendment claim related to the allegedly unreasonable search of his home (Count I of the Second Amended Complaint) is the only surviving theory and on that

---

required to "demonstrate that (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Welton*, 770 F.3d at 673. Under Indiana law, the elements of a malicious prosecution action are: "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Id.* (citing *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009). Here, we have found that probable cause existed to institute the action against Mr. King. Moreover, there is no evidence that any of the defendants acted with malice; Mr. King's unsubstantiated accusations of evidence suppression do not suffice. *See Welton*, 770 F.3d at 674. To the extent Mr. King maintains that his treatment was fundamentally unfair and thus violative of the Due Process Clause, he still cannot defeat Defendants' motion. The criminal charge against Mr. King was dismissed before he proceeded to trial; he therefore "received procedural due process under the Fourteenth Amendment when the state court system vindicated him." *Id.* (*quoting Tully v. Barada*, 599 F.3d 591, 595 (7th Cir. 2010)). To that end , Mr. King's contention that the Due Process Clause somehow ensures that he feels like he is treated justly is misguided. *Manley v. Law*, 889 F.3d 885, 891 (7th Cir. 2018) ("The plaintiffs' argument that they have a liberty interest in a feeling of fair-dealing through the [due process] clause itself fails.").

18

claim a trial will be necessary. At trial, we remind Mr. King that he may not offer any evidence, theories, or arguments relating the those claims that have been dismissed.

IT IS SO ORDERED.

Date: 6/28/2021

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JONATHAN D. KING
9898 River Oak LN W
Fishers, IN 46038

James Alex Emerson
COOTS HENKE & WHEELER, P.C.
aemerson@chwlaw.com

Matthew L. Hinkle
COOTS HENKE & WHEELER
mhinkle@chwlaw.com

David A. Izzo
SELECTIVE STAFF COUNSEL OF INDIANA
david.izzo@selective.com

Jenna Marie Pilipovich
COOTS HENKE & WHEELER, P.C.
jpilipovich@chwlaw.com